CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

August 07, 2025

LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LEWIS D. H. JR.,[1] | ) | |
| | ) | Civil Action No. 7:24-cv-00486 |
| Plaintiff, | ) | |
| v. | ) | REPORT & |
| | ) | RECOMMENDATION |
| | ) | |
| FRANK J. BISIGNANO,[2] | ) | By: C. Kailani Memmer |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Lewis D. H. Jr., ("Lewis") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Lewis alleges that Administrative Law Judge Joseph T. Scruton ("ALJ") erred by failing to properly assess his (1) mental impairments, (2) physical impairments, and (3) subjective allegations. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). This matter has been fully briefed by the parties and neither party has requested oral argument; therefore, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I find that a portion of the Commissioner's decision is not supported by substantial evidence. Accordingly, and for the reasons detailed below, I respectfully

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Frank J. Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

recommend the presiding District Judge remand the Commissioner's final decision denying Lewis' claim for disability insurance benefits for further consideration.

## BACKGROUND

### I.    Procedural History

On August 22, 2022, Lewis filed for DIB alleging disability beginning August 17, 2022. R. 79. His claim was denied initially on December 13, 2022, and again upon reconsideration on March 24, 2023. R. 69–109. On May 22, 2023, Lewis requested a hearing before an ALJ, which was held on January 24, 2024. R. 34–68, 110. Bruce Martin testified as an impartial vocational expert. R. 63–67. On March 5, 2024, the ALJ issued an "Unfavorable Decision" analyzing Lewis' claim under the familiar five-step process,[3] finding that he was not under a disability from August 17, 2022, through the date of decision, and denying his claim for benefits. R. 15–33. Lewis' appeal to the Appeals Council was denied on June 10, 2024. R. 1–7. This appeal followed.

### II.    Medical History for the Relevant Period

Lewis is currently 49 years old. R. 90. On June 17, 2021, Lewis presented to the care of Dr. Sturdivant at Lewis Gale Physicians to establish care following a hospital visit for chest pain. R. 459. Lewis complained that his chest pain worsened with stress and at night. *Id.* He was alert and oriented, had normal affect, and good eye contact; his

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a *prima facie* case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the national economy. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

examination was otherwise normal besides a note about possible gingival disease. R. 460–61. Dr. Sturdivant assessed unspecified chest pain, shortness of breath, obesity with BMI of 35.0-39.9, loss of energy, and diastolic heart failure with preserved ejection fraction. R. 461. Lewis was also screened and diagnosed with moderate depression. R. 459.

On June 23, 2021, Lewis had a follow up appointment with Dr. Sturdivant. R. 468. Lewis denied chest pain since his last visit and was primarily evaluated for anxiety and depression. R. 468–69. Lewis related feeling easily distracted, worrisome, restless, irritable, and having racing thoughts. *Id.* He was diagnosed with moderate major depression and severe anxiety and was prescribed a selective serotonin reuptake inhibitor ("SSRI"). R. 470. On August 8, 2021, Lewis reported that his depression had improved, but he still had moments of anxiety. R. 464. He also related new, moderate to severe pain in his right shoulder. *Id.* Dr. Sturdivant observed pain with right shoulder abduction and mild hypertonicity at supraspinatus and deltoid region. R. 465. Lewis had normal affect and good eye contact. *Id.* He had been losing weight through increased physical activity. R. 466. He was prescribed medication for anxiety, depression, and shoulder pain. *Id.* On September 15, 2021, Lewis reported continued right shoulder pain and new pain in his left foot that worsened with walking. R. 473. His examination revealed right shoulder pain and left anterior foot pain with palpitation and extension. R. 474. Lewis was referred to physical therapy for his shoulder pain and was recommended supportive shoes and Tylenol for his foot pain. R. 475.

On November 20, 2021, Lewis presented to the Lewis Gale Medical Center emergency department complaining of left forearm pain with pronation, supination, and lifting. R. 354. An x-ray did not reveal acute fracture or dislocation. R. 356. The doctor

found the pain was likely muscular in origin and recommended treatment with Flexeril and Naproxen. R. 357–58.

On December 1, 2021, Lewis presented to the Roanoke Memorial Hospital emergency department for shortness of breath attributable to COVID-19. R. 390. His EKG showed sinus tachycardia, and his chest x-rays were consistent with pneumonia. R. 395, 417–18. He was discharged and advised to return if his symptoms worsened. R. 396. His fiancé passed away due to complications of COVID-19. R. 378. Lewis returned to the hospital the next day with worsening shortness of breath and other symptoms of COVID-19. R. 374–78. He had coarse breath sounds with scattered crackles in the lung field, and his chest x-ray showed multifocal pneumonia. R. 378–80. Lewis remained in the hospital and was discharged on December 4, 2021. R. 381–87.

About one year later, on December 3, 2022, Lewis was evaluated by the Virginia Department of Rehabilitative Services to determine possible disability benefits. R. 426–34. His chief complaints were chronic pain in his back, hips, and knees, depression, and anxiety. R. 426. He also related fatigue, cough, shortness of breath, headache, dizziness, and tingling. R. 427. He reported needing assistance with cleaning, washing dishes, and vacuuming, but not with bathing, dressing, eating, or cooking. R. 426. The medical examiner, Christin Elledge, FNP, observed that Lewis had an antalgic gait and difficulty walking, squatting, and kneeling. R. 428. He had diminished strength and range of motion in his back, hips, right knee, and ankles. R. 429. An x-ray of his knee showed trace suprapatellar joint effusion but was negative for evidence of acute fracture, malalignment, or degenerative change. R. 434. Nurse Practitioner Elledge diagnosed Lewis with chronic back pain, hip pain, and right knee pain that causes weakness and decreased range of motion. R. 430. She found Lewis to be credible in his subjective allegations. *Id*. Regarding

4

possible work-related limitations, she found that Lewis can frequently lift and carry up to 20 pounds, occasionally lift and carry up to 50 pounds, stand and walk about 4 hours in an 8-hour work day, sit for 8 hours in an 8-hour work day, occasionally bend, stoop, kneel, and squat, and frequently reach, handle, feel, and grasp. R. 430–31.

Lewis underwent a mental status examination with Matthew T. Jameson, Ph.D., on December 8, 2022. R. 435–40. Lewis discussed his diminished functional capacities after the death of his wife and father, which impacted his ability to manage work-related stress, and exacerbated his tics during stressful periods. R. 436. His tics included jerking his head sideways and closing his eyes forcefully; the examiner found that Lewis did not meet the criteria for Tourette's Disorder or Persistent Motor Tic Disorder, but did meet the criteria for Other Specified Tic Disorder. *Id.* Lewis reported his anxiety was a barrier to returning to work; however, the examiner found Lewis did not meet the criteria for an anxiety disorder. *Id.* Lewis discussed his chronically depressed mood; the examiner found that his symptoms were better characterized as a grief response to the deaths of his wife and father rather than classic depression. *Id.* He found that Lewis met the criteria for Prolonged Grief Disorder. *Id.* Lewis also discussed his learning-related struggles, such as difficulty with written tests and mental mathematical calculations. *Id.* The examiner found that Lewis met the criteria for Specific Learning Disorder. *Id.* Lewis reported he can complete daily tasks such as cooking, laundry, and cleaning, but he did not engage in childcare activities, and generally preferred to be solitary. R. 437. Lewis also reported that he was not taking his mental health medication because he did not find it helpful. R. 438.

The medical examiner found that Lewis's appearance, behavior, and speech were within normal limits other than the mild tics noted during the exam. R. 438. Lewis's eye contact, thought processes, mood, affect, insight, and judgment were all within normal

5

limits. *Id.* The examiner found that Lewis was cognitively intact, but had an impairment in mathematics consistent with his learning disorder, and had a limited ability to persist and concentrate. *Id.* He found Lewis to be consistent and credible throughout the examination. *Id.* He opined that if Lewis worked, he would need a work setting with limited need for mental calculations. R. 439. He found that Lewis's learning disorder may limit his capacity to perform in many contexts, such as making change, but found that Lewis had the capacity to perform functional skills like cooking and management, manage stress related to food service management, and understand, remember, and carry out multistep job instructions. *Id.* He further opined that Lewis's main barrier to maintaining employment was related to his ongoing difficulty to find childcare, rather than a psychiatric disability. *Id.*

The State Agency Initial Disability Determination, dated December 13, 2022, found that Lewis had the following severe impairments: Learning Disorder, Depressive, Bipolar and Related Disorders, Tic Disorders, and Other and Unspecified Arthropathies. R. 71. The State Agency psychological consultant found that Lewis had moderate limitations in working in coordination with others, interacting with the general public, concentrating and maintaining attention for extended periods, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of breaks. R. 76. He found no limitation in understanding, remembering, or applying information or in adapting and managing himself. R. 72, 75–76. The medical consultant found that Lewis could do the following work-related activities: lift and carry 20 pounds occasionally, lift and carry 10 pounds frequently, sit for 6 hours in an 8-hour work day, stand and/or walk for 4 hours in an 8-hour workday, occasionally push/pull with the right lower

6

extremity, occasionally climb stairs, balance, stoop, kneel, and crouch, never climb ladders or crawl, and no concentrated exposure to hazards. R. 74–75. Thus, the opinion concluded that Lewis would be limited to light work. R. 75. A second State Agency Disability Determination Explanation dated March 23, 2023, made substantially similar findings. R. 80–89.

On April 11, 2023, Lewis presented to the care of Dr. Gold at Lewis Gale Physicians for anxiety and depression. R. 477. Lewis reported feeling increasingly anxious and depressed and having trouble completing work assignments. *Id.* He was noted as having normal affect, poor eye contact, and anxiety. R. 479. He was screened and diagnosed with severe anxiety and major depression. *Id.* He was prescribed mediation and referred for a lipid panel to screen for hyperlipidemia. *Id.* On May 8, 2023, he reported significant improvement with Effexor and no side effects. R. 481. However, on June 23, 2023, he reported minimal improvement since being on Effexor, continued anxiety and depression, and poor sleep. R. 485. Dr. Gold prescribed new medication. R. 487. At a follow-up appointment on August 15, 2023, Lewis reported minimal improvement since being on his new medication. R. 489. Dr. Gold increased his dosages. R. 491.

On September 29, 2023, Lewis presented to American Family Care complaining of pain in his left foot. R. 493. He exhibited reduced range of motion and tenderness in his foot. R. 493–94. His x-ray was unremarkable. R. 496. Lewis was discharged and instructed to return in three days if his pain worsened. R. 494.

On January 5, 2024, Lewis presented to the care of Dr. Gold and reported continued anxiety and depression with minimal improvement with medicine. R. 510. He was noted as having normal affect, good eye contact, and normal speech. R. 511. Dr. Gold switched Lewis's medication regimen and advised him to follow up in six weeks. R. 512.

On February 5, 2024, Lewis presented to the care of Dr. Westrick for a psychiatric evaluation. R. 514–18. Lewis reported suffering from anxiety and depression for twenty years, recently exacerbated in 2021 due to the deaths of his wife and father. R. 515. His symptoms manifested as a depressed mood, irritability, crying easily, anhedonia, lack of energy and concentration, anxiety, increased appetite, and difficulty sleeping. *Id.* During the examination, Lewis was cooperative and engaged, had no psychomotor agitation, good eye contact and speech, "really depressed" mood, stable affect, logical thought processes, and intact judgment and insight. R. 516–17. Dr. Westrick assessed that Lewis was suffering from a moderate episode of recurrent major depressive disorder and complicated grief. R. 517. He recommended treatment with medication, therapy, and exercise. *Id.*

### III.    Administrative Hearing Testimony

A hearing was held on January 24, 2024, where Lewis testified about his work experience and health conditions. R. 35. His prior full-time work experience included a management position at a department store, a pallet-jack driver at a warehouse, an outdoor laborer/landscaper, and a security officer at a hotel. R. 42, 51. He quit working at the department store after one month due to general work frustrations and inadequate pay. R. 47–48. He quit working at the warehouse after one week because he felt nervous running the pallet-jack. R. 48. His job as a laborer only lasted a couple of months, and he quit working as a security officer due to the stress of walking around the hotel properties. R. 51–52. His primary reason for bouncing around from job to job was due to relocation. R. 52.

Lewis testified he does not do well in fast-paced environments or environments with a lot of customers due to his anxiety and depression. R. 41, 43, 47. At the time of the

hearing, he was working part-time as a trainer for new crew members at a restaurant. R. 40–41. His manager frequently permitted him to take extra breaks when he felt overwhelmed. R. 46. He testified he cannot work more than part-time because it would cause him anxiety. R. 48–49. He did not feel confident pursuing jobs with less interaction with the public because he does not have relevant work experience, has trouble learning simple jobs, and becomes frustrated easily. R. 49.

In August of 2022, around his alleged onset date, Lewis testified his anxiety and depression were worsening due to difficulty in finding a job, homelessness, and an incident with child protective services. R. 52. When he is depressed, he cries a lot, feels angry, and isolates himself. R. 52–53. When he is anxious, he has low motivation, is easily overwhelmed, and becomes frustrated. R. 53–54. He also has difficulty concentrating and staying on task. R. 54. His anxiety and depression cause him to have poor sleep. R. 57. He still grieves the loss of his fiancé and his father, who passed away within four days of each other in 2021. R. 57. Lewis was also diagnosed with a tic disorder, but he had not experienced a tic in "a while" and stated that it was not an ongoing condition. R. 54–55.

He testified that he has ongoing heart issues that he treats with Aspirin. R. 55. His heart condition does not cause any symptoms or limit his activities. *Id.* He has intermittent pain in his right shoulder, knees, and left foot. R. 55–56. He cannot sit down or stand in one spot longer than five to ten minutes before he needs to get up and walk around. R. 56–57. Lewis has two biological children and two stepchildren. R. 59–60. He helps them get ready for the day and completes other housework such as laundry, grocery shopping, and cleaning. *Id.* However, he testified = his anxiety and depression often interfere with his ability to complete these tasks. R. 62.

Bruce Martin testified as an impartial vocational expert. R. 63. He testified that Lewis's past work would be classified as light work. *Id.* The ALJ asked Mr. Martin whether there were jobs in the national economy for a hypothetical individual of Lewis's age and background with the following limitations: simple, routine, and detailed tasks, but not complex tasks, frequent lifting and carrying up to 20 pounds, occasional bending, squatting, kneeling, and stooping, standing up and walking for 4 hours, and sitting for 8 hours. R. 64. Mr. Martin testified that there was light work available for such an individual, including positions as an usher, inspector, and retail marker. R. 65. In Mr. Martin's experience, these jobs are not fast paced. *Id.* If the same individual were limited to no more than occasional public interaction, the usher job would be eliminated. *Id.* If the same individual were further limited to frequent but not constant reaching, handling, fingering, and grasping bilaterally, the jobs do not change. R. 66. Mr. Martin testified that an average worker can be off-task for 10% of the workday and should have zero absences within the first 60–90 days of the job. R. 67.

## ALJ FINDINGS

At the first step of the five-step evaluation, the ALJ found that Lewis had not engaged in substantial gainful activity since August 17, 2022, the alleged onset date. R. 20. At the second step, the ALJ found that Lewis had the following severe impairments: "severe back, hip and right knee pain, obesity, incidence of atypical angina without indications of recurrence but in the recent medical evidence, depressive disorder, anxiety disorder, and bereavement/grief disorder." R. 20.

At the third step, the ALJ found that Lewis' impairments, either individually or in combination, did not meet or equal a listed impairment. R. 21–23. The ALJ specifically considered Listings 1.15 (compromise of a nerve root), 1.18 (abnormality of a major joint),

12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). R. 21–22. While obesity is not a listed impairment at Step 3, the ALJ considered whether it alone or in combination with other impairments may equal a medical listing; he did not discover evidence to support such a finding. R. 21.

The ALJ concluded that Lewis has the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 C.F.R. § 404.1567(b)[4] except the claimant is capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently with ordinary breaks, and able to sit for a full 8 hour workday if required. The claimant is able to stand/walk for 4 hours each, occasionally bend, squat, climb, stoop, crouch, and crawl; and, able to sustain simple routine tasks and some detailed but no complex tasks or fast paced work; and requires work with occasional interaction with the public.

R. 23.

At the fourth step, the ALJ concluded that Lewis was unable to perform any past relevant work. R. 27–28. At the fifth step, the ALJ identified jobs in significant numbers in the national economy that Lewis could perform, such as inspector and retail marker. R. 28–29. Thus, the ALJ determined that Lewis was not disabled at any time from August 17, 2022, the alleged onset date, through March 5, 2024, the date of his decision. R. 29.

## <u>STANDARD OF REVIEW</u>

The court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Lewis failed to demonstrate that he was disabled under the Act.[5] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial

---

[4] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[5] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (emphasizing that the standard for substantial evidence "is not high"). While substantial evidence is a somewhat deferential standard, the Court does not "reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

In contrast, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess about how the ALJ arrived at his conclusions"). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## **DISCUSSION**

---

an impairment which affects his ability to perform daily activities or certain forms of work; instead, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Lewis argues that the ALJ's assessment of his (1) mental impairments, (2) physical impairments, and (3) subjective allegations are not supported by substantial evidence. *See* ECF No. 14 at 13–26.

## I.    The ALJ's assessment of Lewis's mental impairments is not supported by substantial evidence.

Lewis argues that the ALJ's mental RFC is not supported by substantial evidence. ECF No. 14 at 13–18. First, he argues that the ALJ failed to explain how the RFC accommodates his moderate limitations in interacting with others and ignored testimony that his employer allows him to take extra breaks when he is nervous. *Id.* at 13–14. He also argues that the ALJ failed to explain how the RFC accommodates his moderate limitation in concentrating, persisting, and maintaining pace. *Id.* at 14.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). In his analysis, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. *See id.* at *7. Importantly, the ALJ must explain his conclusions by citing to specific medical and nonmedical evidence, such as daily activities and observations. *See id.* ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion . . .").

Before developing the mental RFC, the ALJ must determine whether the claimant's mental impairment is "severe" at Step 2, and if so, determine whether the impairment

meets a Listing for a mental impairment at Step 3. *See Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). At Step 3, the ALJ also "assesses an individual's limitations and restrictions described in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings . . . [and] determines whether the claimant's limitations are none, mild, moderate, marked, or extreme." *Richard M. v. Bisignano*, No. 7:24-CV-409, 2025 WL 1885669, at *11 (W.D. Va. July 8, 2025). A moderate limitation is one that "fairly" limits the claimant's mental functioning in a given area. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The mental RFC is different than the assessments made at Steps 2 and 3; the RFC "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C." *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). The "various functions" to be considered include the claimant's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Fears v. Berryhill*, No. 6:16-CV-00055, 2018 WL 1547365, at *2 (W.D. Va. Mar. 29, 2018) (quoting SSR 96-8p, 1996 WL 374184 (July 2, 1996)) (remanding where ALJ failed to conduct "a more detailed assessment" as required by SSR 96-8p).

The Fourth Circuit explained that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019). The logical explanation component "is just as important as the other two," and "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Id.* A record of the basis for the ALJ's ruling is a "necessary predicate to engaging in substantial evidence review," and

if "the reviewing court has no way of evaluating the basis for the ALJ's decision," then the proper course is remand. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

Here, at Step 2, the ALJ found that Lewis's depressive disorder, anxiety disorder, and bereavement/grief disorder are severe mental impairments. R. 20–21. At Step 3, the ALJ found that Lewis has a moderate limitation in interacting with others and a moderate limitation in concentrating, persisting, and maintaining pace. R. 22. The ALJ's discussion of Lewis's moderate limitations at Step 3 are supported by substantial evidence, and the ALJ builds a logical bridge from the evidence to his conclusion. For example, in concluding that Lewis has a moderate limitation in interacting with others, the ALJ cited Lewis's reports that he is overwhelmed by busy places and does not engage in work requiring interaction with customers and the public. R. 22. The ALJ weighed this evidence against other evidence in the record, such as evidence that Lewis retained the capacity to get along well with authority figures, had no significant issues in interacting with coworkers in his current role training restaurant crew members, and had no significant social deficits. *Id.* In concluding that Lewis has a moderate limitation in concentrating, persisting, or maintaining pace, the ALJ weighed Lewis's reports that he struggles with sustaining concentration against a lack of objective evidence of cognitive deficits, and the absence of evidence that he lacks the ability to maintain the level of concentration required at his current job. R. 22–23.

While the ALJ engaged in a detailed explanation of Lewis's moderate limitations at Step 3, the ALJ failed to adequately explain how these moderate limitations translate to work-related limitations in the mental RFC at Step 4. Regarding Lewis's moderate limitation in interacting with others, the ALJ concluded that Lewis "requires work with occasional interaction with the public" in the mental RFC. R. 23. However, the ALJ did

not articulate why this is a sufficient or appropriate RFC accommodation and, thus, failed to engage in a "detailed assessment" as required by SSR 96-8p. The only evidence related to Lewis's ability to interact with the public noted in the ALJ's narrative discussion is Lewis's report that he got along well with authority figures, his hearing testimony that he does not engage in server type work at his current restaurant job, and normal mental status findings at doctors' visits. R. 24–25. The ALJ found persuasive the State Agency's finding that Lewis has a moderate limitation in interacting with others. R. 26. However, the ALJ failed to connect this medical and opinion evidence to his conclusion that Lewis can only occasionally interact with the public.

The ALJ similarly failed to explain how Lewis's moderate limitation in concentrating, persisting, or maintaining pace is accommodated by a mental RFC accommodation of "no complex tasks or fast paced work." R. 23. In the narrative discussion, the ALJ generally notes Lewis's complaints of an inability to deal with busy situations and sustain adequate concentration. R. 24. The ALJ found the State Agency opinion regarding Lewis's moderate limitation in concentration, persistence, and maintaining pace to be persuasive. R. 26. Conversely, the ALJ found the opinion of Dr. Jameson, who opined that Lewis has deficits in concentration and persistence and cognitive limitations due to a possible learning disorder, to be unpersuasive and inconsistent with the whole record. R. 27. The ALJ concluded that "the objective findings of record are not consistent with or supportive of limitations beyond the residual functional capacity determined herein." *Id.* Without a more robust explanation as to why the medical and opinion evidence supports the conclusion that Lewis is unable to complete complex tasks or fast paced work, the ALJ does not meet the standard set forth in SSR 96-8p.

16

In sum, the ALJ fails to build a logical bridge between the evidence that Lewis has moderate limitations in interacting with others and concentrating and maintaining pace, and the conclusion that he has work-related limitations to occasional interaction with the public, no complex tasks, and no fast-paced work. Without *any* discussion of these RFC limitations, and *no* explanation as to *why* these work-related limitations are appropriate in Lewis's case, the court is left to guess at how the ALJ reached his conclusion. *See Drumgold v. Comm'r of Soc. Sec.*, No. 24-1394, 2025 WL 2017232, at *5 (4th Cir. July 18, 2025) (noting that "appellate *re*view is possible only when someone has first articulated a *view*."). Remand is appropriate for the ALJ to articulate this connection, and to engage in a "detailed assessment" as required by SSR 96-8p.

## II.    The ALJ's assessment of Lewis' physical impairments is supported by substantial evidence.

Next, Lewis argues that the ALJ's physical RFC is not supported by substantial evidence. ECF No. 14 at 18–22. Specifically, he argues that the ALJ erred in his evaluation of the medical opinions, failed to include a finding regarding whether Lewis would require breaks or absences from work, and failed to include a finding regarding whether his pain is so continuous or severe that it would prevent him from working a full eight-hour workday. *Id.* at 19–21. I will address each argument in turn.

First, Lewis argues that the ALJ erred by making an RFC finding that he can stand for 4 hours *and* walk for 4 hours in an 8-hour workday, while the State Agency medical opinion found that he could only walk *or* stand for 4 hours in an 8-hour workday. *Id.* at 18–19.[6] Lewis also argues that the ALJ erred by "ignoring" the State Agency opinion regarding his ability to push/pull with the right lower extremity. ECF No. 14 at 19.

---

[6] Lewis does not argue that the ALJ erred in concluding that the State Agency opinion is persuasive.

The State Agency opinion found Lewis capable of occasionally pushing/pulling with the right lower extremity, standing/walking 4 hours each day, and sitting for 6 hours daily. R. 26, 74. The ALJ found this opinion persuasive, but found Nurse Practitioner Elledge's opinion regarding the standing/walking function more persuasive, concluding that Lewis could perform each function for four hours each. R. 26. Nurse Practitioner Elledge noted Lewis's history of chronic knee and back pain and noted decreased strength and range of motion in the lower extremities, but did not include a push/pull limitation, and the ALJ did not include a push/pull limitation in the RFC. R. 23, 428–29

The ALJ's decision to treat Nurse Practitioner Elledge's opinion as more persuasive is supported by substantial evidence. It is not this court's role to re-weigh conflicting evidence or substitute its judgment for that of the Commissioner's. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). The court's role is to simply determine whether the ALJ's decision is supported by substantial evidence. Here, the ALJ conducted a fulsome review of the medical record, including records regarding Lewis's treatment for left forearm, shoulder, and foot pain, as well as Nurse Practitioner Elledge's above-mentioned diagnostic findings. R. 24–26. This evidence is sufficient to support the conclusion that Lewis is limited to the standing and walking for 4 hours in an 8-hour workday and does not require a push/pull limitation.

Next, Lewis argues that the ALJ erred by failing to include a finding regarding whether he would require breaks or absences from work. ECF No. 14 at 19–20. Lewis relies primarily on *Monroe v. Colvin*, 826 F.3d 176 (4th Cir. 2016), where the Fourth Circuit held that the ALJ erred by failing to make specific findings about whether the claimant's sleep apnea or narcolepsy "would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events

would occur." *Monroe*, 826 F.3d at 188. However, an ALJ's failure to include such a finding is not *per se* error. *See e.g. Kimberly L. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-00026, 2022 WL 995391, at *3 (W.D. Va. Mar. 31, 2022). In *Kimberly L.*, the claimant argued that the ALJ erred by failing to assess whether her "impairments would cause her to experience episodes of pain necessitating breaks." *Id.* at *3. The court found that the failure to make this specific finding was not an error because, unlike the ALJ in *Monroe*, the ALJ acknowledged the claimant's physical impairments, gave adequate weight to the claimant's complaints of pain, and properly accommodated them in the RFC. *See id.*

Here, the ALJ acknowledged as severe impairments Lewis's back, hip and right knee pain, obesity, and incidence of atypical angina. R. 20–21. While the ALJ found that his impairments could reasonably be expected to cause the alleged symptoms, he found that the totality of the evidence suggested that his symptoms may not be as severe or debilitating as he described. R. 25. The ALJ concluded that the RFC gave adequate weight to Lewis's physical conditions consistent with the medical evidence. R. 27. Thus, "[t]he ALJ did not make the same mistake as the ALJ in *Monroe* because he acknowledged and accommodated [Lewis's] complaints" of pain and determined that he only required "ordinary breaks" in the RFC. *Carolyn M. v. Kijakazi*, No. 7:20-cv-88, 2021 WL 4482976, at *6 (W.D. Va. Sept. 29, 2021).

Finally, Lewis argues that the ALJ erred in failing to include a finding regarding whether his pain is so continuous or severe that it would prevent him from working a full eight-hour workday. ECF No 14 at 21. The purpose of the RFC is to assess "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." *See* 20 C.F.R. §§ 404.1545(b); SSR 96-8P, 1991 SSR LEXIS 5, 1996 WL

374184 at *1-2. Here, the ALJ determined that Lewis could perform sustained work activities in an ordinary work setting on a regular and continuing basis with certain limitations and accommodations. The ALJ provided a narrative discussion explaining his conclusions and the evidence supporting the RFC determination. In conclusion, the ALJ's physical RFC is supported by substantial evidence and appropriately builds a logical bridge between the evidence and his conclusion.

### III.    The ALJ's evaluation of Lewis' subjective allegations is supported by substantial evidence.

Finally, Lewis argues that the ALJ failed to properly consider his subjective allegations by failing to acknowledge the limited extent to which he can perform some daily activities. ECF No. 14 at 22–25. For example, the ALJ did not mention Lewis's testimony that his employer allows him to take extra breaks. *Id.* at 23. The ALJ also failed to mention certain limitations Lewis noted in his function reports, such as cooking simple meals that do not take long to prepare, needing help with household chores and carrying in groceries, and using a cane to walk. *Id.*

An ALJ must assess a claimant's subjective complaints regarding the extent of his functional limitations by considering the objective medical evidence and other factors including his treatment history, medications, work history, and daily activities. 20 C.F.R. § 404.1529(c). He must engage in a two-step process in which he first determines whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, and then evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit the claimant's work-related activities. 20 C.F.R. § 404.1529(b)–(c). In making this determination, the ALJ must "examine the entire case record, including the

20

objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 82 Fed. Reg. 49462-03 (Oct. 25, 2017).

An ALJ "may not consider the *type* of activities a claimant can perform without also considering the *extent* to which []he can perform them," and may not "cherry pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017). However, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014) (citing *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Here, the ALJ followed the appropriate framework set forth in the regulations. He found that Lewis's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but Lewis's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 25. In making this determination, the ALJ considered the whole record, including Lewis's self-reported daily activities, such as cooking, caring for his children, doing laundry, cleaning, and working part-time. R. 24–25, 27. The ALJ specifically considered the function reports and Lewis's hearing testimony, balancing the facts that point towards disability and nondisability. R. 22–24. While the ALJ did not specifically mention some of Lewis's reports of limitations in his daily activities, an ALJ is not required to refer to every piece of evidence in making a

creditability determination; rather, the ALJ is required to provide "sufficient reasoning" for the court to conclude that the proper legal analysis was conducted. *See Aytch v. Astrue*, 686 F. Supp. 2d 590, 602 (E.D.N.C. 2010). The ALJ has met this standard here by making a credibility determination that was not unreasonable, contradicted by other fact findings, or based on an inadequate reason or no reason at all. *See Bishop*, 583 F. App'x 65, 68 (4th Cir. 2014). Accordingly, after reviewing the entire record, I find that substantial evidence exists to support the ALJ's determinations regarding Lewis's subjective allegations.

## CONCLUSION

The ALJ's evaluation of Lewis's physical impairments and subjective allegations is supported by substantial evidence; however, remand is warranted because the court cannot conduct a proper review of the ALJ's mental RFC finding regarding Lewis's limitations to occasional interaction with the public, no complex tasks, and no fast-paced work. Therefore, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative review, and the case be **DISMISSED** from the Court's active docket.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Elizabeth K. Dillon, Chief United States District Judge. The Clerk is directed to serve copies of this Report and Recommendation to all counsel of record and any unrepresented parties.

Entered:  August 7, 2025

C. Kailani Memmer
United States Magistrate Judge

23